NUMBER 13-00-322-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


BENARD PACKER A/K/A BERNARD PACKER , Appellant,


v.


THE STATE OF TEXAS , Appellee.

___________________________________________________________________


On appeal from the 148th District Court

of Nueces County, Texas.

__________________________________________________________________


O P I N I O N

Before Chief Justice Valdez and Justices Dorsey and Rodriguez

Opinion by Justice Rodriguez


Appellant, Benard Packer (Packer), brings this appeal following a conviction for capital murder. By one point of error,
Packer contends he was denied effective assistance of counsel. We affirm.

Terry Epps (Epps) and Packer were involved in a fight in an apartment being used as a "crack house." Epps was killed as a
result of numerous stab wounds inflicted by Packer during the fight. (1) Epps was found with one pant leg pulled up and his
pockets pulled inside out. (2) Packer left the apartment and fled to Mexico. Approximately two months later, Packer turned
himself in and gave a written statement wherein he denied stealing money from Epps and claimed he was acting in
self-defense. A jury found Packer guilty of capital murder, and the trial court sentenced him to life imprisonment.

In his sole point of error, Packer argues he was denied effective assistance of counsel. Specifically, Packer complains of
his counsel's failure to object to the State's improper jury arguments, which included: (1) expressing personal opinions
regarding witnesses' testimony; (2) injecting harmful unsworn testimony before the jury; and (3) referring to the
expectations and demands of the community for a particular result in the case. 

The United States Supreme Court and the Texas Court of Criminal Appeals have promulgated a two-pronged test to
determine whether representation was so inadequate that it violated a defendant's Sixth Amendment right to counsel. See,
e.g.,Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 726 S.W.2d 53, 54-55 (Tex. Crim. App.
1986); Munoz v. State, 24 S.W.3d 427, 433 (Tex. App.-Corpus Christi 2000, no pet.). To establish ineffective assistance of
counsel, appellant must show: (1) his attorney's representation fell below an objective standard of reasonableness; and (2)
there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. 
Strickland, 466 U.S. at 687; Stone v. State, 17 S.W.3d 348, 350 (Tex. App.-Corpus Christi 2000, pet. ref'd). Appellant has
the burden of proving ineffective assistance of counsel by a preponderance of the evidence. See Munoz, 24 S.W.3d at 434;
Stone, 17 S.W.3d at 350.

An allegation of ineffective assistance of counsel will only be sustained if it is firmly founded and the record affirmatively
demonstrates counsel's alleged ineffectiveness. Stone, 17 S.W.3d at 350; Guzman v. State, 923 S.W.2d 792, 797 (Tex.
App.-Corpus Christi 1996, no pet.). In assessing a claim of ineffective assistance of counsel, there is a strong presumption
that counsel's conduct fell within the wide range of reasonable professional assistance. Garcia v. State, 57 S.W.3d 436,
440 (Tex. Crim. App. 2001). Also, in the absence of evidence of counsel's reasons for the challenged conduct, an appellate
court will assume a strategic motivation and will not conclude that the conduct was deficient unless the conduct was so
outrageous that no competent attorney would have engaged in it. See id.;Thompson v. State, 9 S.W.3d 808, 814 (Tex.
Crim. App. 1999).

In addressing the first prong of Strickland, we must first decide whether the State's arguments were objectionable, because
an attorney's failure to object to proper argument cannot constitute ineffective assistance. See Cooper v. State, 707 S.W.2d
686, 689 (Tex. App.-Houston [1st Dist.] 1986, pet. ref'd). The approved general areas of jury argument are: (1) summation
of evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law
enforcement. See, e.g., Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2001) (citing Hathorn v. State, 848
S.W.2d 101, 117 (Tex. Crim. App. 1992)). Advocates are given wide latitude in drawing inferences from the evidence so
long as they are reasonable, fair, and offered in good faith. Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). 
Even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error
unless, in light of the whole record, the argument is extreme or manifestly improper, violative of a mandatory statute, or
injects new facts harmful to the accused into the trial proceeding. Wesbrook, 29 S.W.3d at115. In reviewing challenges to
jury argument, we examine the argument in the context of the case. Gaddis, 753 S.W.2d at 398.

I. Expressing Personal Opinions of Witness Testimony

Packer first contends his counsel was ineffective when he failed to object to the State's comments regarding the credibility
of his statement and of witnesses.

A. Defense Witness, Michael Martinez

Packer argues his counsel should have objected when the State commented on Michael Martinez's testimony during closing
argument. The State argued:

Do you remember Michael? I think they made a movie with Jim Carey about him called Liar Liar [sic] a couple of years
ago, but he was good. He was good. I mean he was quick. He just made it up as we went along. I asked him questions,
and he made them up, but you could tell he was making up stuff as we went along, trying to make the story fit.It is
improper for a prosecutor to engage in name calling designed to evoke an emotional response and thus encourage the jury
to come to a verdict on some other basis than the facts before it. Gaffney v. State, 937 S.W.2d 540, 544 (Tex.
App.-Texarkana 1996, pet. ref'd). However, a prosecutor is allowed to argue that a defense witness is not worthy of belief. 
Satterwhite v. State, 858 S.W.2d 412, 425 (Tex. Crim. App. 1993). Arguing that a witness is lying is an argument that the
witness is not worthy of belief. Gaffney, 937 S.W.2d at 544. In this instance, the State was arguing that Martinez's
testimony was not worthy of belief, therefore, the comment made during closing argument was not improper.

B. Packer's Written Statement

Packer next argues his trial counsel was ineffective by failing to object to the State's argument that Packer's written
statement was not truthful. The State argued, "[Y]ou can tell by the statement that the [d]efendant made this up. . . . and
you can tell by reading it that it just couldn't have happened the way he says. . . ." After reading part of Packer's written
statement, the State went on to argue:

That means they were in the kitchen when he defended himself. How much blood was there in the kitchen? Absolutely
none. Why wasn't there any blood there? Because this is not true. This isn't true. This is simply his way of trying to
explain what happened so that he can get off, because he thinks that there's one person on this jury, one single person,
who's going to fall for this. . . . Because Packer was claiming self-defense, the State was attempting to refute Packer's
self-defense claim by making reasonable deductions from the evidence presented. See Wesbrook, 29 S.W.3d at 115;
Gaddis, 753 S.W.2d at 398. Furthermore, the State is permitted to attack the veracity of a defendant's exculpatory statement
in a confession admitted at trial. Smith v. State, 898 S.W.2d 838, 846 n. 8 (Tex. Crim. App. 1995). Therefore, we find the
State's argument was not improper.

C. State's Witness, Shelia Hinojosa

Packer next argues his trial counsel was ineffective for failing to object when the State argued to the jury, "Does the
evidence, the untampered evidence, does that show exactly what [Hinojosa] was testifying to, that [Hinojosa] was telling
the truth?" Packer contends this statement expressed an opinion regarding Hinojosa's credibility in order to bolster her
testimony. 

In support of his argument, Packer relies on Menefee v. State, 614 S.W.2d 167 (Tex. Crim. App. 1981). However, Menefee
is distinguishable. In Menefee, the prosecutor directly expressed a personal opinion of a witness's truthfulness, stating, "I
don't believe I have ever seen anybody that I thought was any more honest than she is." Id. at 168. In this instance, the
State did not personally vouch for the truthfulness of its witness. The argument was a summation of the evidence and a
response to Packer's argument supporting his self-defense theory. See, e.g.,Wesbrook, 29 S.W.3d at 115. The State's
argument was not improper.


II. Injection of Unsworn Testimony

Packer next contends his counsel was ineffective by failing to object to the State's injection of allegedly harmful unsworn
testimony. Packer argues the State improperly used the word "untampered," as set out above, in describing the State's
evidence. Upon review of the record, it appears the State intended this adjective to mean "undisputed," or "clear," because
the State was referring to the consistency of Hinojosa's testimony with the photographs of the clothing Epps was wearing. 
See Gaddis, 753 S.W.2d at 398. Furthermore, the crime scene technician gave testimony regarding the protocol used to
process crime scenes. He testified that when he first arrives on the scene, he meets with an officer who is there to secure
"the crime scene to make sure that nobody . . . tampers or alters the crime scene." He further testified that evidence is
collected meticulously in order to ensure the evidence is not destroyed or tampered with. Therefore, it was not
unreasonable for the State to deduce from this testimony that the evidence had not been tampered with. See Wesbrook, 29
S.W.3d at 115; Gaddis, 753 S.W.2d at 398. We conclude the State's inclusion of the word "untampered" was not improper. 


Packer also argues the State injected harmful unsworn testimony when it stated, "[t]he case that I have brought to you is a
strong case, probably one of the strongest that I have seen for [c]apital [m]urder." Packer relies on three cases to support
his contention. In Irving v. State, 573 S.W.2d 5, 6 (Tex. Crim. App. 1978), the prosecutor asked the jury to rely on his
expertise. In the second case, Hughes v. State, 563 S.W.2d 581, 587 (Tex. Crim. App. 1978), the prosecutor argued he was
more of an expert than the jury in assessing punishment. Irving and Hughes are distinguishable, however, because in this
case the State did not suggest that the jury should follow its recommendation because the prosecutor was an expert in the
field of sentencing. The third case Packer relies on is Romo v. State, 593 S.W.2d 690 (Tex. Crim. App. 1980), wherein the
court held the prosecutor's argument was improper because it went outside the record. Id. at 694 (prosecutor told the jury
that he had never asked a jury for the maximum punishment). A prosecutor is allowed to argue opinions concerning issues
in the case as long as the opinions are based on the evidence in the record and do not constitute unsworn testimony. Felder
v. State, 848 S.W.2d 85, 95 (Tex. Crim. App. 1992) (prosecutor stated, "This is a strong case. It may not have been a long
case but it is a strong case by the evidence presented to you."). In Felder, the court found no error in the argument because
the prosecutor referred the jury to the evidence and opined that it was strong without eliciting any unsworn testimony. Id. 
In the present case, it is clear the State was referring to the evidence presented and not eliciting unsworn testimony. 
Moreover, the State's argument could be characterized as a response to Packer's counsel's closing argument that the
elements of capital murder had not been proved by the State. See, e.g.,Wesbrook, 29 S.W.3d at 115. We conclude the
State's inclusion of this argument was not improper.


III. Expectations and Demands of the Community

Finally, Packer contends his counsel was ineffective for failing to object to the State's argument when it referred to the
expectations and demands of the community. Packer specifically argues the State made an improper argument when it
stated:

I'm asking you to do that today, to stand up, somebody needs to stand up against the Bernard [sic] Packers of America and
tell him that his kind of conduct will not be tolerated in an organized society. It will not be tolerated in Nueces County. 
We need to tell him that. We need to tell him that. Now, I'm willing to stand up. The police are willing to stand up. They
did their investigation. I've done my presentation. Will you stand up with me? . . . Will you do that with me? I think if
you do, we're on our way to a better community and a better society.Packer relies on several cases to support his argument. 
See Prado v. State, 626 S.W.2d 775, 776-77 (Tex. Crim. App. 1982) (prosecutor argued the desire of the community by
stating, "They'd want him to go there if they knew what he did.");Pennington v. State, 345 S.W.2d 527, 528 (Tex. Crim.
App. 1961) (prosecutor stated, "The people of Nueces County expect you to put this man away."); Cox v. State, 247 S.W.2d
262, 263-64 (Tex. Crim. App. 1952) (prosecutor stated, "The people of De Soto are asking the jury to convict this
defendant."); Porter v. State, 226 S.W.2d 435, 436 (Tex. Crim. App. 1950) (prosecutor stated, "The people of this
community expect you to put this man away. . . ."). We find these cases distinguishable. In this instance, the State did not
refer to the expectations or demands of the community. The State only made a plea for law enforcement. A proper plea for
law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the
deterrence of crime in general. Borjan v. State, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990) (en banc). It has been held
proper for the prosecution to ask the jury to stand and be counted, see Cerda v. State, 10 S.W.3d 748, 756-57 (Tex.
App.-Corpus Christi 2000, no pet.), to ask the jury to send a message that the accused's behavior will not be tolerated in
their county, see Goocher v. State, 633 S.W.2d 860, 864-65 (Tex. Crim. App. 1982), and to tell the jury that they are the
last link in the chain of law enforcement. See Rodriguez v. State, 552 S.W.2d 451, 455-56 (Tex. Crim. App. 1977). The
State may also argue the impact of the jury's verdict on the community. Borjan, 787 S.W.2d at 56. The argument made by
the State in this case was a plea for law enforcement and, thus, proper. See, e.g., Wesbrook, 29 S.W.3d at 115.

Because we find the State's jury arguments were proper, Packer failed to prove that his attorney's representation fell below
an objective standard of reasonableness, thus his representation was not ineffective. See Strickland, 466 U.S. at 687.
Packer's sole point of error is overruled.

Accordingly, the trial court is affirmed.

 

NELDA V. RODRIGUEZ

Justice



Do not publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 21st day of March, 2002.

1. Epps's throat was slashed and he also had approximately twenty-five stab wounds.

2. Epps had kept money and drugs in both his socks and pant pockets.