Lester Jay Henderson a/k/a Lester J. Henderson

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-476-CR

LESTER JAY HENDERSON A/K/A APPELLANT

LESTER J. HENDERSON

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) 

------------

I.  Introduction

A jury convicted Appellant Lester Jay Henderson of the offense of arson and assessed punishment at twenty-six years’ confinement.  In three points, Henderson challenges the legal and factual sufficiency of the evidence and the admission into evidence of a typed, formal confession at the punishment phase.  We will affirm.

II.  
Factual History

On the morning of October 23, 2002, multiple witnesses employed at the Meadowbrook United Methodist Church observed an individual, later identified as Henderson, standing in a church doorway.  Henderson was holding two metal drip pans filled with gasoline.  A bucket on the ground beside him contained gasoline and fuel oil soaked sand, eleven aerosol cans, and a container of gasoline with a piece of cloth protruding from it that had been soaked in gasoline as well.  Upon noticing Henderson and smelling the strong odor of gasoline, witnesses asked him what he was doing, informed him that he did not belong there, and told him to leave immediately. Henderson responded by saying that he was going to start a fire and that he wanted to talk to the media.  Witnesses again urged Henderson to leave, and he once again exclaimed his intent to start a fire.  He then lit the metal drip pan containing gasoline by using a lighter, and a fire resulted.  

Witnesses responded to the fire by calling 911 and by evacuating numerous children located in the room connected to the doorway where Henderson had been standing.  Henderson fled the church, and police subsequently apprehended him.  Investigators later determined that the combination of items in Henderson’s possession constituted an incendiary device.

Henderson pleaded not guilty to the charge of arson.  A jury subsequently convicted him, and this appeal followed.

III.  Legal and Factual Sufficiency of the Evidence

In his first and second points, Henderson challenges the legal and factual sufficiency of the evidence, arguing that the evidence before the jury was insufficient to support his conviction for arson. 

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

In contrast, in reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
.
 at *7.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 
 In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 
at *4; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
2004 WL 840786, at *4.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at *7, 9.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Evidence Is Legally And Factually Sufficient

The trial court’s charge to the jury instructed them as follows:

A person commits the offense of arson if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage a building, and the property intended to be damaged or destroyed by the actor was a place of worship:

(A) knowing that said building is within the limits of an incorporated city or town; OR

(B) knowing that said building is located on property belonging to another; OR

(C) knowing that said building has located within it property belonging to another; OR

(D) when the person is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another.

See
 Tex. Penal Code Ann.
 § 28.02 (Vernon 2003).  Under the current statute, the “offense [is] complete whenever the actor starts a fire with the requisite culpable mental state, whether or not damage of any kind actually occurs.”  
Romo v. State
, 593 S.W.2d 690, 693 (Tex. Crim. App. [Panel Op.] 1980), 
overruled on other grounds by Wagner v. State, 
S.W.2d 303, 313 (Tex. Crim. App. 1984).

Three employees of the Meadowbrook United Methodist Church testified that Henderson was in the church and that he had in his possession two metal drip pans and a bucket with various items in them.  The bucket contained sand moistened by gasoline and fuel oil, eleven aerosol cans, and a container of gasoline with a gasoline-soaked cloth extending out of the container.  
When approached by two of the witnesses, Henderson twice proclaimed his intent to start a fire.  He then ignited the gasoline in the metal drip pan with a lighter. Henderson was aware of his surroundings and his location.  He chose to stand in a doorway of a church leading to a preschool classroom.  The classroom contained one teacher and six children at the time of the incident.  Knowing this, he nevertheless ignited his concoction, causing a flame to arise and a strong odor to fill the area.  Fort Worth arson investigator E.C. Rodriguez testified that the combination of items, including the bucket, gas can, and liquid emitting a strong odor, constituted an incendiary device.

Moreover, Article 28.02(d) of the Texas Penal Code states that “the offense is a felony of the first degree if it is shown on the trial of the offense that . . . the property intended to be damaged or destroyed by the actor was a habitation or a place of assembly or worship.”  
Tex. Penal Code Ann.
 § 28.02(d)(2).  The trial court’s language in its charge to the jury mirrored this portion of the penal code.  Here, through the testimony of multiple witnesses, the State established that Meadowbrook United Methodist Church is a place of worship, and accordingly, met its burden on this element. 

Thus, viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789;
 Burden, 
55 S.W.3d at 612.  Furthermore, viewing all the evidence in a neutral light, favoring neither party, we also conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.  Accordingly, we hold that the evidence is both legally and factually sufficient to support Henderson’s conviction for arson.  
Zuniga
, 2004 WL 840786 at *7; 
see also Loredo v. State
, 130 S.W.3d 275, 280 (Tex. App.—Houston [14th
 Dist.] 2004, no pet.); 
Graham v. State
, 96 S.W.3d 658, 661-62 (Tex. App.—Texarkana 2003, pet.  ref’d); 
Wheeler v. State
, 35 S.W.3d 126, 133-36 (Tex. App.—Texarkana 2000, pet. ref’d).  We overrule Henderson’s first and second points.

IV.  Admissibility of Confession

In his third point, Henderson alleges that the trial court erred by overruling the motion to suppress his second, typed confession.  The State introduced two written statements at the punishment phase of the trial.  Henderson hand wrote the first statement after having been 
read his rights.  Henderson made a second, more formal, typed statement within an hour of the first statement after the interrogating detective asked Henderson if he could elaborate on a few points in the first statement.  The detective typed the statement as Henderson spoke.  The detective did not give Henderson the
 
warnings found in Code of Criminal Procedure article 38.22, section 2 before transcribing the second statement. 

Henderson complains that the second statement was improperly admitted because, even though he received 
Miranda 
warnings before he provided the first, hand-written statement, he did not receive them before he provided the second, typed statement.  Henderson argues, “A second formal statement was taken from the Defendant in violation of TEX. CODE CRIM. P. ART. 38.22 V.A.T.S. in that the detective did not give the Defendant his Miranda warnings.  The record is clear that the detective did not bother to read the Defendant his Miranda warnings in the second, formal typed statement.”  Thus, Henderson alleges a violation of 
article 38.22, section 2 of the Texas Code of Criminal Procedure.  
See
 
Tex.  Code Crim.  Proc.  Ann. 
 art. 38.22 § 2 (Vernon 1979).
(footnote: 2) A.  Standard of Review

When reviewing a motion to suppress, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
See Villarreal v.  State
, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)
.  Voluntariness is determined by looking at the totality of the circumstances.  
See Griffin v. State
, 765 S.W.2d 422, 427 (Tex. Crim. App. 1989).  Once a defendant moves to suppress a statement on the ground of involuntariness, the due process guarantee requires the trial court to hold a hearing on the admissibility of the statement outside the presence of the jury.  
See Jackson v. Denno
, 378 U.S. 368, 380, 84 S. Ct. 1774, 1782-83 (1964).  At the hearing, the trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding may not be disturbed on appeal absent a clear abuse of discretion.  
See Alvarado v. State
, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  As such, abuse of discretion is the appropriate standard of review for challenges to the trial court’s admission of evidence.  
See Angleton v. State
, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).

B.  Second Statement Was Admissible

Article 38.22, section 2(a) provides that

(a) the accused, prior to making the statement, either received from the magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning; 

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; 

Tex. Code Crim. Proc. Ann.
 art. 38.22 ྷ 2(a).
  
The State argues that Henderson’s second statement was admissible because his rights were read to him both at the scene of the crime and by the interviewing detective prior to the first statement.  Furthermore, the State points out that Henderson’s rights were listed at the top of the second statement, were initialed by him, and that “there was no constitutional requirement that the warnings be repeated.”

The law is settled that a mere pause in police questioning does not require additional warnings.  
See
 
Dunn v. State,
 721 S.W.2d 325, 338 (Tex. Crim. App. 1986) (holding “rewarning is not required where the interrogation is only a continuation about the same offense”), 
abrogated on other grounds by Creager v. State, 
952 S.W.2d 852, 856 (Tex. Crim. App. 1997); 
Burruss v. State,
 20 S.W.3d 179, 183-84 (Tex. App.—Texarkana 2000, pet. ref’d) (holding that pause in interrogation did not require rewarning); 
Franks v. State
, 712 S.W.2d 858, 861 (Tex. App.—Houston [1st Dist.] 1986, pet. ref’d) (holding that, following a pause in the interrogation, new warnings were not required).  A rewarning may be necessary when a 
significant time lapse occurs between the initial and subsequent questioning, a different subject matter is discussed in a subsequent interview, and the authorities “acted so as to dilute the efficacy of the warning” previously given.  
See United States v. Hopkins
, 433 F.2d 1041, 1045 (5th Cir. 1970), 
cert. denied
, 401 U.S. 1013 (1971). Here, 
the trial court held a 
Jackson v. Denno 
hearing and concluded that Henderson received his 
Miranda 
warnings on October 23, 2002
 shortly after 10:00 a.m. as required by article 38.22 and acknowledged receipt of those warnings by signing the warning sheet.  The court further found that Henderson then provided a hand-written statement, which he completed at 11:00 a.m. Less than an hour later, at 11:53 a.m.,  Henderson clarified his first statement by providing a second statement typed by Detective Bruno.  After giving this second statement, Henderson initialed each paragraph of the statement, initialed below the 
Miranda 
warnings, and signed the statement.  The court concluded the second statement was not inadmissible under article 38.22, stating: 

I understand your concern, Mr. St. John [Henderson’s counsel], of the warning and then hours or days later a statement being taken, but there are two statements completed within an ongoing period of time, all within barely a two-hour time limit, and from the evidence before the Court, this is one kind of continued conversation, and the law doesn’t require you to read someone their rights every time you speak to them if it’s an ongoing interview.

We hold that the strict requirements of article 38.22, section 2 did not require Henderson to be verbally rewarned prior to giving the second statement. 
See 
Tex. Code Crim. Proc. Ann.
 art. 38.22 § 2.  The time elapsed between Henderson’s two statements is minimal.
  Moreover, Henderson initialed each paragraph and the warnings found on the face of the second statement. 
Henderson signed the statement and indicated that everything was true and correct in the statement.  Detective Bruno interviewed Henderson before and after the pause in the interrogation, and the record is devoid of any evidence that he “acted so as to dilute the efficacy of the warning” previously given by him.  
See Hopkins
, 433 F.2d at 1045
.  Henderson’s second statement was made in the course of an ongoing interview so verbal warnings need not have been repeated prior to the second statement.  
See Dunn
, 721 S.W.2d at 338; 
Franks
, 712 S.W.2d at 861.
 
  

Viewing the evidence in the light most favorable to the ruling, we hold that the trial court did not abuse its discretion in admitting Henderson’s second statement.  
See Villarreal,
 935 S.W.2d at 138; 
Alvarado, 
912 S.W.2d at 211;
 Griffin, 
765 S.W.2d at 427
.  
We overrule 
 
Henderson’s third point.

V.  Conclusion

Having overruled all of Henderson’s points, we affirm the trial court’s judgment. 

PER CURIAM

PANEL F: WALKER, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: October
 7, 2004

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.1.

2:
A confession may be deemed “involuntary” under three different theories:  (1) failure to comply with Article 38.22, (2) failure to comply with the dictates of 
Miranda v. Arizona
, 384 U.S. 436, 86 S.Ct. 1602 (1966), or (3) a confession in violation of due process or due course of law because it was not freely given.  
Wolfe v. State
, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996).